In re Richard David KRULL, dba R. D. Krull, Consultant, a sole proprietorship, Social Security No. 358–34–5992, Debtor.

Bankruptcy No. 85–B–02554–C.

United States Bankruptcy Court, D. Colorado.

Oct. 17, 1985.

Edward Bendelow, Denver, Colo., for creditor.

Edmund Lambert, Lakewood, Colo., for debtor.

## FINDINGS, CONCLUSIONS AND ORDER ON OBJECTION TO CONFIRMATION

PATRICIA A. CLARK, Bankruptcy Judge.

This matter comes before the Court on an objection to confirmation of the Chapter 13 plan. Klaus Peter Landau, a judgment creditor of the debtor, Richard D. Krull, filed the objection. The objection essentially states three grounds for opposition: the debtor does not have regular income, the debtor has unsecured debts exceeding $100,000, and the plan was not proposed in good faith. A hearing was held on August 15, 1985 at which this Court ruled that the debtor did indeed have regular income for reasons stated on the record. The remaining issues will be dealt with herein.

The debtor is the former owner/operator of Vantage Advertising, Inc., Odyssey Talent, Inc., and Odyssey Model Management, Inc. He has done consulting work in the fields of marketing, advertising and public relations and, the past several years he has been the public relations director for the Denver stop of the Ladies Professional Golf Association tour. Most recently the debtor accepted a sales position with Lange Graphics which will pay between $18,000 and $36,000 annually although he formerly has made as much as $52,000 a year in salary.

By far the largest debt owed by Mr. Krull arises out of a $45,000 judgment awarded to Klaus Landau. At one time Vantage Advertising, Inc., did business with the Light Company, which was owned by Klaus Landau and Andria Landau. In June, 1983, Andria Landau filed a dissolution of marriage action against Klaus Landau. The Landaus subsequently entered into an agreement, which became an order of the court handling their dissolution proceeding, under which Mr. Landau was to purchase the Light Company from Andria Landau. In the meantime, Andria Landau became romantically involved with the debtor and shortly thereafter the debtor,

Andria Landau and Henri DuPuis successfully engineered the takeover of the Light Company. Mr. Landau brought suit in Jefferson County District Court alleging that the debtor wrongfully deprived him of his interest in the family business. The court found for Mr. Landau on April 16, 1985 and awarded him $25,000 in actual damages and $20,000 in exemplary damages.

Approximately one month later, Mr. Krull filed a petition seeking relief under Chapter 13 of the Bankruptcy Code. The debtor's Plan proposes to go 35 months and pay approximately 19 percent of the unsecured debt which would mean that the plaintiff would be entitled to a distribution on his judgment of approximately $9,185. In contrast, if a Chapter 7 had been filed the unsecured creditors would receive no distribution from the liquidation. Additionally, the debtor's budget reflects an estimated monthly income of $1,987, and expenses of $1,502, leaving a monthly excess of $485 of which $450 is to be paid to the trustee.

■ The first of Mr. Landau's objections to confirmation rests on the grounds that the debtor has unsecured debt exceeding $100,000, hence the jurisdictional limits set forth in 11 U.S.C. § 109(e) are not met and the debtor cannot qualify as a debtor in a Chapter 13. In his schedule, the debtor lists unsecured debts totaling $83,157.47. Mr. Landau argues that a debt of $15,500, owed to Green Mountain Bank (Bank), is erroneously listed as a secured loan because the asserted collateral has no value. Further, adding the $15,500 to several thousand dollars in other unsecured debts that the creditor alleges were omitted, such as interest on the judgment debt, produces an aggeregate unsecured debt exceeding $100,000.

The debtor claims that the $15,500 loan is partially secured by a $7,000 promissory note executed by Henri DuPuis in favor of the debtor. Apparently the note was the sole consideration the debtor received when he sold Odyssey Talent, Inc., and Odyssey Model Management, Inc., to Mr. DuPuis, although the debtor retained a lien on all the furniture, fixtures and equipment owned by the two Odyssey companies. Payments under this note were supposed to commence on October 1, 1984. On November 9, 1984, the debtor assigned this note to the Bank as collateral for the $15,500 loan. Mr. DuPuis failed to make any payments under the note until June, 1985 and, at the time of the hearing on the objection to confirmation, he had also made payments for the months of July and August.

"It is the policy of the Uniform Commercial Code that a security agreement shall be effective between the parties and against other parties except as specifically provided otherwise in the Code." *Martin Buick v. Colorado Springs National Bank,* 32 Colo.App. 235, 511 P.2d 912 (Colo. Ct.App.1973) (citations omitted). Here, the plaintiff is unable to provide any legal basis for its assertion that the $15,500 loan is not partially secured by the $7,000 promissory note. Although Mr. DuPuis is delinquent on his payments, he has commenced making monthly payments. An overdue note such as this one is neither without value nor invalid since it is still collectible. In fact, the debtor here made no prior attempt to collect on the note. Rather he testified that the Odyssey companies were undercapitalized when he sold them to Mr. DuPuis, consequently he wanted to give Mr. DuPuis some time in order that the venture might prove successful. Therefore, this Court finds that the Bank loan is partially secured by the $7,000 promissory note and the debtor meets the jurisdictional debt limits set forth in 11 U.S.C. § 109(e).

Mr. Landau's remaining objection is based on the grounds that the debtor has failed to satisfy the good faith requirement found in 11 U.S.C. § 1325. Specifically, the plaintiff charges that the debtor's employment history indicates an ability and likelihood of future increases in income, the type of debt owed the plaintiff is not dischargeable in a Chapter 7, the plan contains inaccuracies in an attempt to mislead the court, the amount of proposed payments is inadequate in light of the debtor's disposable income and the plan constitutes

an abuse of the provisions, purpose and spirit of Chapter 13.

Before a Chapter 13 plan can be confirmed, the Court is required to find that the plan has been proposed in good faith. 11 U.S.C. § 1325(a)(3). The test of "good faith" in this district was clearly enunciated in *Flygare v. Boulden,* 709 F.2d 1344 (10th Cir.1983). There the court listed 11 factors to be considered on the issue of good faith, though tempered with the proviso that the "list is not exhaustive, and the weight given each factor will necessarily vary with the facts and circumstances of each case." *Flygare,* 709 F.2d at 1348.

■ A review of the 11 factors set forth in *Flygare* analyzed in the context of the facts and circumstances surrounding this filing is essential for a resolution of the good faith issue. The factors are as follows:

(1) The amount of the proposed payments and the amount of the debtor's surplus. The debtor's monthly budget appears reasonable and leaves him with $485, of which $450 goes into the plan. However, Section 1325(b)(1) requires that upon an objection, the plan must provide "that *all* of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan." 11 U.S.C. § 1325(b)(1). As a result, this plan may not be confirmed unless payments are increased to $485 per month.

(2) The debtor's employment history, ability to earn and likelihood of future increases in income. It is apparent that the debtor has the potential to earn much more than his schedules currently reflect since he has earned as much as $52,000 a year. Furthermore, he has just begun a new job which compensates him primarily on a commission basis. Thus there is a good chance that his earnings will increase as he gains on-the-job experience, yet the proposed plan makes no provision for future increases.

(3) The expected duration of the proposed plan is 35 months, which constitutes a substantial effort. However, 11 U.S.C. § 1325(b)(1) requires that the plan extend to 36 months when an objection has been filed. Again, this plan may not be confirmed unless the expected duration of the plan is increased to 36 months.

(4) The accuracy of the plan's statement of debts, expenses, and percentage of repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the Court. The only disputed figure in the above areas concerns whether the $15,500 bank loan was partially secured or totally unsecured. The debtor's schedule of debts described this loan as partially secured, therefore, there appears to be no attempt to mislead the Court.

(5) Preferential treatment between classes of creditors is not contested here.

(6) The modification of secured debts is not at issue.

(7) The type of debt sought to be discharged and whether any such debt is non-dischargeable in a Chapter 7. The judgment debt involved in the present matter probably would not be discharged in a Chapter 7 since it involves willful and malicious injury to the property of the plaintiff and is excepted from discharge under 11 U.S.C. § 523(a)(6).

(8) The existence of special circumstances such as inordinate medical expenses. There are no such extraordinary expenses here.

(9) The debtor has not previously sought any other bankruptcy relief.

(10) The motivation and sincerity of the debtor in seeking Chapter 13 relief. "Care must be taken not to allow revulsion over a debtor's past deeds to detract from or impair a finding of good faith where that debtor is making an effort to satisfy past obligations to the extent possible and still embark on a fresh start." *In re Chura,* 33 B.R. 558, 560 (Bankr.D.Colo.1983). While the debt owed to the plaintiff resulted from the wrongful conduct of the debtor, it does not appear that the sole purpose of this

filing was to extinguish the judgment debt. The judgment debt accounts for approximately 50 percent of the debtor's unsecured debts and the debtor testified that he was unable to keep current on his bills once the judgment was entered. As a result, the evidence indicates that, on balance, the effort here is toward rehabilitation which comports with the purpose and spirit behind Chapter 13 relief.

(11) The burden of administration on the trustee is not unusual here.

Other cases from this district in which the court has upheld an objection based upon lack of good faith are distinguishable from this one. For instance, *In re Lincoln*, 30 B.R. 905 (Bankr.D.Colo.1983) involved a filing in which the debtor sought to discharge a debt based upon embezzlement. The court determined that the debtor failed to meet her burden of proving that the plan has been proposed in good faith. In particular the court took exception to the debtor's proposal to pay the trustee the sum of $100 a month for a period of only four months. Similarly, *In re Chura*, 33 B.R. 558 (Bankr.D.Colo.1983) involved a debtor who sought to discharge a judgment debt of $26,808.27, for willful conversion, outrageous conduct and punitive damages. This debt constituted approximately 90 percent of the unsecured indebtedness to be discharged on a $1 distribution. Furthermore, the duration of the proposed plan was only nine months and was not viewed as a substantial effort.

In the present matter the debtor is making a substantial effort to repay his unsecured debt by proposing to pay almost 20 percent of his unsecured debt over a 35–month period. Although the judgment debt would probably not be discharged in a Chapter 7, Mr. Landau will receive a significant distribution without the added burden of commencing garnishment proceedings on the non-exempt portion (25 percent) of the debtor's wages. Consequently, after weighing all the facts and circumstances, this Court finds that the proposed plan does not constitute an abuse of the purpose or spirit of Chapter 13. Yet, although the debtor's plan has been filed in good faith, it cannot be confirmed as presently constituted because it is not in accord with the requirements of 11 U.S.C. § 1325(b)(1)(A) and (B).

While this Court will not confirm the proposed plan, the present difficulties can be rectified by an amended plan containing the following provisions. First, the amended plan must provide that all of the debtor's purported disposable income must be paid to the trustee for distribution pursuant to the plan. Secondly, the duration of the plan must be extended to 36 months. Finally, the Court is concerned about the debtor's potential for increasing his earnings above that sum which is presently scheduled. Therefore, the amended plan should require the debtor to pay 50 percent of any net earnings, above and beyond the amount scheduled, into the plan for distribution to the creditors. This provision does not conflict with the requirement in Section 1325(b)(1)(B) that all of the debtor's projected disposable income be paid into the plan because, "as of the effective date of the plan," all the debtor's projected income is provided for. Earnings above and beyond the amount scheduled are too speculative at this point as to be regarded as "projected" income. Since there are no changes in income which can be clearly foreseen, the Court must simply multiply the debtor's current disposable income by 36 in order to determine his "projected" income. *See Collier on Bankruptcy*, ¶ 1325.01[3][d][i] (15th ed. 1985). Finally, the amended plan must also include a provision whereby the debtor submits a quarterly earnings and expenses statement to the Standing Chapter 13 Trustee.

ORDERED that confirmation of the proposed plan is denied.

FURTHER ORDERED that the debtor shall submit an amended Chapter 13 plan within 10 days, failing which the case will be dismissed.